UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
----------------------------------------------------------X
MONICA ARROYO-HORNE,                       **MEMORANDUM & ORDER**
                                                                              07 CV 5213 (RJD)

                     Plaintiff,

-against-

CITY OF NEW YORK, NEW YORK CITY
POLICE DEPARTMENT,

                     Defendants.
----------------------------------------------------------X
DEARIE, Chief Judge.

       Since March 2000, Monica Arroyo-Horne has worked as a Police Administrative Aide ("PAA") for defendant New York City Police Department ("NYPD"). Proceeding pro se, Arroyo-Horne claims that because of her race (African-American), her age (39 years old when she started working as a PAA) and her gender, she has been discriminated against and subjected to a hostile work environment by supervisors and co-workers at three different NYPD precincts. She further claims that she has been retaliated against for: (1) filing complaints with the New York State Division of Human Rights ("NYSDHR") and Equal Employment Opportunity Commission ("EEOC"); (2) lodging internal complaints against her supervisors; and (3) reporting that other PAAs do not follow NYPD regulations. She asserts claims under Title VII of the Civil Rights Act of 1964, the Equal Protection Clause of the Fourteenth Amendment and the First Amendment.

       Defendants NYPD and City of New York move for summary judgment, seeking dismissal of Arroyo-Horne's complaint in its entirety. After carefully reviewing the record, the Court grants defendants' motion. There is no evidence in the record from which a reasonable juror could conclude that Arroyo-Horne has been discriminated against because of her race, age

or gender. Indeed, Arroyo-Horne concedes that she has not been discriminated against at any time based on her age or gender and that the last time she was discriminated against because of her race was in 2001. Nor is there any evidence from which a reasonable juror could conclude that Arroyo-Horne was retaliated against because she complained of discrimination. In the end, Arroyo-Horne's personal belief that her supervisors are retaliating against her because she filed complaints with the NYSDHR and EEOC is, without more, insufficient to survive summary judgment.

## BACKGROUND

Arroyo-Horne was assigned to the payroll department of the NYPD's Emergency Services Unit ("ESU") on March 13, 2000. A performance evaluation for the period March 13, 2000 to January 13, 2001, was prepared by PAA Judy Dupree, who, like Arroyo-Horne, is black, and NYPD Lieutenant Jack Cambria, a white male. The evaluation, dated March 26, 2001, noted that Arroyo-Horne worked hard, displayed "many positive character traits," and "met standards," but that she "experienced difficulty in working harmoniously with a co-worker, which proved to be an on-going disruption to this command's efficiency." The evaluation also noted that Arroyo-Horne had been subjected to disciplinary proceedings for violating department regulations. (Defendants' 56.1 Statement of Undisputed Facts, Ex. D.)[1] On April 30, 2001, Cambria and supervisory PAA Rhonda Koffman, a white woman, informed Arroyo-Horne that because of the disruption to the precinct caused by the problems Arroyo-Horne was having with her co-worker, PAA Dalton, they had decided to transfer Arroyo-Horne. Arroyo-Horne was given her choice of precinct and chose Brooklyn North Narcotics so that she could remain close to her ailing mother's home.

---

[1] Unless otherwise noted, all references to "Ex. __" are to the exhibits attached to the Declaration of Pinar Ogzu, dated October 23, 2009, and submitted in support of the defendants' motion for summary judgment.

2

On May 1, 2001, Arroyo-Horne filed her first of four complaints of discrimination with the NYSDHR, asserting, among other things, that her supervisors' allegations that she was disruptive were untrue and that Lt. Cambria and PAA Koffman had created a hostile work environment when she informed them of her plan to appeal the performance evaluation she received. (Defs' Ex. E.) She also claimed that the decision to transfer her rather than PAA Dalton, who is white, was because of race. The NYSDHR dismissed her complaint on April 18, 2003. (Defs' Ex. G.)

Arroyo-Horne worked at Brooklyn North Narcotics from May 2001 to June 2002. Her first performance evaluation, prepared on November 8, 2001, indicated that she "takes initiative and displays a willingness to learn," but that her "recurring verbal confrontations" with her immediate supervisor "tends to cause tension and hostility in the work area." (Defs' Ex. H.) On May 27, 2002, Arroyo-Horne was arrested and charged with assault after her 67-year-old mother called 911 complaining that Arroyo-Horne had hit her in the chest with a closed fist. (Defs' Ex. J.) Arroyo-Horne was suspended immediately. Upon being restored to full duty on June 19, 2002, she was immediately transferred to the 90th Precinct. The assault charges against her were eventually dropped.

Arroyo-Horne's first performance evaluation at the 90th Precinct was dated April 1, 2003. While her overall performance "met standards," it was noted that she was "not a people person," and that she had "several confrontations with her co-workers . . . which is bringing down morale and causing a lot of animosity." Her transfer was recommended. (Defs' Ex. M.) Arroyo-Horne filed her second complaint with the NYSDHR on April 18, 2003; in it, she claimed that she was transferred from the ESU to the 90th Precinct in May 2001 in retaliation for filing her first complaint with the NYSDHR. (Defs' Ex. P.) The NYSDHR dismissed the

complaint on September 10, 2003. (Defs' Ex. Q.) Arroyo-Horne filed her third complaint with the EEOC in June 2004: in it, she claimed that her November 25, 2002, May 12, 2003, and May 19, 2004 requests to be transferred out of the 90th Precinct (Defs' Ex. O) were denied in retaliation for filing her first two NYSDHR complaints. The EEOC dismissed her complaint on August 13, 2004. (Defs' Ex. R.)

Arroyo-Horne's second performance evaluation at the 90th Precinct was dated November 4, 2004. Again, her performance "met standards," but it was noted that had been "unhappy" at the 90th Precinct and her transfer was recommended. (Defs' Ex. S.) She was transferred to the 75th Precinct a few days later on November 9, 2004.

The transfer to the 75th Precinct initially seemed to go well for Arroyo-Horne. Her first performance evaluation at the 75th Precinct, prepared on November 2, 2005, indicated that she "met standards," "does her best to accomplish her task," "knows what she has to do and does it willingly" and "with time, she will be a great asset to the Department." (Defs' Ex. U.) Her second evaluation dated September 26, 2006, was similarly favorable: she was considered to be "reliable and knowledgeable" and to have "a strong ability to render help to others." Moreover, unlike her previous reviews, neither review made any mention that Arroyo-Horne was having problems getting along with her co-workers or supervisors. Nor did Arroyo-Horne file any complaints of discrimination from November 2004 to February 2007.

Unfortunately, matters took a turn for the worse beginning in August 2006. According to Arroyo-Horne, PAA Mary McLaurin, who, like plaintiff, is black, was assigned to the 75th Precinct by NYPD Chief Michael Marino to lead a campaign of harassment against Arroyo-Horne in retaliation for Arroyo-Horne's earlier complaints of discrimination. Arroyo-Horne alleges that the retaliation consisted of PAA McLaurin: (1) calling her into an "unscheduled

meeting" on September 18, 2006, and "humiliating" her by discussing her mental health status and the health status of her mother; (2) changing her work schedule on October 18, 2006, from 8 AM to 4 PM to 7 AM to 3 PM; (3) yelling at her and threatening her with a "command discipline"[2] on January 11, 2007, after Arroyo-Horne admittedly arrived late to work; (4) yelling at her and giving her a command discipline on January 31, 2007, after Arroyo-Horne remained at her desk after her shift ended (even though Arroyo-Horne had received permission from another supervisor to work a later shift that day); and (5) refusing, on at least four occasions between August 2006 and February 20, 2007, to allow Arroyo-Horne to take lunch at her scheduled lunch hour (even though PAA McLaurin knew that Arroyo-Horne suffered from a "slightly diabetic" condition that would be exacerbated by not being able to eat lunch at her regular hour). Arroyo-Horne further claims that NYPD Lieutenant Omally Benefeld shouted loudly enough on one occasion for a co-worker to hear him tell Arroyo-Horne that he "should fire [her] ass." She further claims that on March 30, 2007, she called the precinct to request a sick day so that she could care for her mother, and a desk supervisor, Sergeant Jenkins, treated her rudely, hung up on her, and denied her same-day request.

Arroyo-Horne filed her fourth and final complaint with the NYSDHR on February 20, 2007; in it, she claimed that she was discriminated against at the 75th Precinct because she is black and that PAA McLaurin was harassing her in retaliation for filing the April 2003 NYSDHR complaint. (Defs' Exs. SS, TT.) The NYSDHR dismissed the complaint on August 29, 2007, finding that its investigation had failed to uncover any evidence substantiating Arroyo-Horne's claims. (Defs' Exs. UU, VV.) The EEOC adopted the NYSDHR's findings on September 21, 2007. (Defs' Ex. WW.)

---

[2] A command discipline is a "[n]on-judicial punishment available to a commanding/executive officer to correct deficiencies and maintain discipline within the command." (Defs' Ex. Y.)

5

Arroyo-Horne filed this lawsuit on December 14, 2007, alleging that "[h]er supervisors and superiors have repeatedly and continually harassed her because of her race, sex, or age and because of her prior complaints made both formally and informally in addition to internally and externally to the Division of Human Rights and the Equal Employment Opportunity Commission." Arroyo-Horne also wrote to the Court on October 5, 2009, noting that earlier that day she had been transferred from the 75th Precinct to the 69th Precinct and opining that the transfer was just "another form of retaliation from the [NYPD] for my filing both a EEOC [charge] as well as this lawsuit." (Docket Entry 63.) In preparing the transfer request, the Commanding Officer of the 75th Precinct noted that Arroyo-Horne has a "contempt for authority in that she does not listen or want[] to listen to the instructions of her supervisors." (Defs' Ex. QQ).

## DISCUSSION

I. <u>Summary Judgment Standard</u>

Summary judgment is appropriate "if the pleadings, the discovery and disclosure materials on file, and any affidavits show that there is no genuine issue as to any material fact and that the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(c)(2). On a motion for summary judgment, the trial court "must first resolve all ambiguities and draw all inferences in favor of the non-moving party, and then determine whether a rational jury could find for that party." <u>Graham v. Long Island R.R.</u>, 230 F.3d 34, 38 (2d Cir. 2000) (citation omitted). "Only when no reasonable trier of fact could find in favor of the nonmoving party should summary judgment be granted." <u>White v. ABCO Eng'g Corp.</u>, 221 F.3d 293, 300 (2d Cir. 2000) (quoting <u>Taggart v. Time, Inc.</u>, 924 F.2d 43, 46 (2d Cir. 1991)). The non-moving party, however, "may not rely on conclusory allegations or unsubstantiated speculation" in seeking to avoid summary judgment, <u>Byrnie v. Town of Cromwell, Bd. of Educ.</u>, 243 F.3d 93,

101 (2d Cir. 2001) (internal citation omitted), and summary judgment is mandated "against a party who fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial." Celotex Corp. v. Catrett, 477 U.S. 317, 322 (1986)).

The Court is cognizant that because evidence of discrimination in the workplace is "rarely overt," Winnie v. Buffalo Police Dept., 2003 WL 251951, at *3 (citing Bickerstaff v. Vassar College, 196 F.3d 435, 448 (2d Cir. 1999)), "trial courts must be particularly cautious about granting summary judgment in the employment discrimination context," Clemente v. New York State Div. of Parole, 684 F. Supp. 2d 366, 371 (S.D.N.Y. 2010). "Nonetheless, 'summary judgment remains available for the dismissal of discrimination claims in cases lacking genuine issues of material fact.'" Id. (quoting Schiano v. Quality Payroll Sys., Inc., 445 F.3d 597, 603 (2d Cir. 2006)). The Court is also cognizant that because plaintiff is proceeding pro se, it must read her opposition papers "liberally, construing them to raise their strongest arguments." Bligen v. Griffen, 2007 WL 430427, at *2 (S.D.N.Y. Feb. 8, 2007) (citing Burgos v. Hopkins, 14 F.3d 787, 790 (2d Cir. 1994)). Nevertheless, "a pro se party's conclusory assertions, completely unsupported by evidence, are not sufficient to defeat a motion for summary judgment." Jackson v. County of Nassau, 2010 WL 335581, at *5 (E.D.N.Y. Jan. 22, 2010) (citations omitted).[3]

---

[3] The Court notes that Arroyo-Horne's memorandum of law in opposition to defendants' motion, which also doubles as her statement of facts, contains few citations to the factual record. While the Court construes Arroyo-Horne's claims liberally because she is proceeding pro se, it will not scour the record to assess whether a genuine issue of material fact exists. See Melendez v. Wright, 2008 WL 4757360, at *1 n.1 (N.D.N.Y. Oct. 29, 2008) (citing Amnesty Am. v. Town of West Hartford, 288 F.3d 467, 470 (2d Cir. 2002) ("We agree with those circuits that have held that Fed. R. Civ. P. 56 does not impose an obligation on a district court to perform an independent review of the record to find proof of a factual dispute.") (citations omitted)).

II.   Title VII Claims

Title VII of the Civil Rights Act of 1964 "forbids employment discrimination on the basis of 'race, color, religion, sex, or national origin.'" Clemente, 684 F. Supp. 2d at 372 (quoting Richardson v. Comm'n on Human Rights and Opportunities, 532 F.3d 114, 119 (2d Cir. 2008) (quoting 42 U.S.C. § 2000e-2(a)(1)). Under the familiar McDonnell Douglass burden-shifting summary judgment standard applicable to discrimination claims, the plaintiff bears the initial burden of establishing a prima facie case of discrimination, namely: (1) that she belonged to a protected class; 2) that she was qualified for the position she held; 3) that she suffered an adverse employment action; and 4) that the purported adverse employment action that she suffered occurred under circumstances giving rise to an inference of discrimination. See Fleming v. MaxMara USA, Inc., 644 F. Supp. 2d 247, 261 (E.D.N.Y. 2009) (citing Feingold v. New York, 366 F.3d 138, 152 (2d Cir. 2004)). Although plaintiff's burden at the prima facie stage is minimal, she must provide some competent evidence that would be sufficient to permit a rational finder of fact to infer a discriminatory motive. See Patrick v. New York City Transit Auth., 2007 WL 2071555, at *11 (E.D.N.Y. July 16, 2007) (citing Cronin v. Aetna Life Ins., 46 F.3d 196, 204 (2d Cir. 1995)). If the plaintiff establishes a prima facie case, "[t]he burden then shifts to the employer who must provide a legitimate, nondiscriminatory business rationale to justify its conduct." Clemente, 684 F. Supp. 2d at 374 (citing Texas Dept. of Cmty. Affairs v. Burdine, 450 U.S. 248 (1981)). The employer's burden is "not a demanding one." Bickerstaff, 196 F.3d at 446. If the employer meet its burden, "the presumption raised by the prima facie case is rebutted, and drops from the case," id. (quoting St. Mary's Honor Center v. Hicks, 509 U.S. 502, 507 (1993) (internal quotations and citations omitted), and the burden shifts back to the plaintiff

8

to show that the employer's stated reason is "a pretext for unlawful discrimination." Davis v. Dept. of Veterans Affairs, 178 Fed. App'x 51, 52, 2006 WL 116093 (2d Cir. Apr. 25, 2006).

### A. Arroyo-Horne Failed To Exhaust Her Administrative Remedies On Her Gender And Age Discrimination Claims

It is well-settled that before a claim of discrimination under Title VII can be brought in federal court, "the claims forming the basis of such suit must be presented in a complaint to the EEOC or equivalent state agency." Williams v. New York City Hous. Auth., 458 F.3d 67, 69 (2d Cir. 2006) (citing 42 U.S.C. § 2000e-5). "Exhaustion is ordinarily 'an essential element' of a Title VII claim," id. at 70 (quoting Legnani v. Alitalia Linee Aeree Italiane, S.P.A., 274 F.3d 683, 686 (2d Cir. 2001)), "and is designed to give the administrative agency the opportunity to investigate, mediate, and take remedial action." Shah v. New York State Dept. of Civil Service, 168 F.3d 610, 614 (2d Cir. 1999) (quoting Stewart v. United States Immigration & Naturalization Service, 762 F.2d 193, 198 (2d Cir. 1985)). Claims not raised in an EEOC complaint, however, may be brought in federal court if they are 'reasonably related' to the claim filed with the agency. See id. (citing Butts v. City of New York Dept. of Hous. Pres. & Dev., 990 F.2d 1397, 1401 (2d Cir. 1993)). "A claim is considered reasonably related if the conduct complained of would fall within the 'scope of the EEOC investigation which can reasonably be expected to grow out of the charge' that was made." Fitzgerald v. Henderson, 251 F.3d 345, 359-60 (2d Cir. 2001) (quoting Butts, 990 F.2d at 1402). Whether claims are reasonably related turns on whether the "specific facts alleged by a plaintiff in his or her EEOC complaint . . . suggests both forms of discrimination, so that the agency receives adequate notice to investigate discrimination on both bases." Deravin v. Kerik, 335 F.3d 195, 202 (2d Cir. 2003). Courts in this Circuit have "generally held that claims alleging discrimination based upon a protected classification which are different than the protected classification asserted in administrative

9

filings are not reasonably related." Culbertson v. Charosa Foundation Corp., 2004 WL 2370686, at *3 (E.D.N.Y. Oct. 18, 2004).

None of Arroyo-Horne's four administrative complaints alleges gender or age discrimination, or alleges facts that would put the NYSDHR or EEOC on notice to investigate such charges. Accordingly, those claims are unexhausted and are dismissed. See, e.g., Hawkins v. Wegmans Food Market, Inc., 224 Fed. App'x 104, 2007 WL 1475626 (2d Cir. May 21, 2007) ("As Hawkins's conclusory allegations about his termination on the basis of his gender and learning disability would not alert the EEOC to investigate charges of race and age discrimination as well, it cannot be said that the allegations of race and age discrimination are reasonably related to the claims in Hawkins's EEOC filing; thus, these claims remain unexhausted, and, accordingly, should have been dismissed by the district court.") (citing Williams, 458 F.3d at 70).

Even if the claims were exhausted, the Court would still dismiss them as Arroyo-Horne testified that she has not been discriminated against because of her gender or age:

> Q: What about gender, did you feel you were discriminated against because of your gender when you were at ESU?
>
> A: No.
>
> Q: When did you think you were discriminated against because of your gender?
>
> A: I said I didn't think it was because of my gender.

(Arroyo-Horne Dep. Tr. at 196:7-14);

> and
>
> Q: Are you claiming that you were not discriminated against at the NYPD because of gender?
>
> A: Yes.

10

> Q: So you are not alleging you were discriminated against your gender [sic] at the N.Y.P.D?
>
> A: Yes.

(Arroyo-Horne Dep. Tr. at 197:1-6.);

and

> Q: At the 75th Precinct are you alleging you were discriminating [sic] against because of your race?
>
> A: No.
>
> Q: Because of your sex?
>
> A: No.
>
> Q: Because of your age?
>
> A: No.

(Arroyo-Horne Dep. Tr. at 208:10-17.) These admissions are fatal to her claims.

### B. *Arroyo-Horne Cannot Establish A Prima Facie Case Of Race Discrimination*

Arroyo-Horne asserts that the last time she suffered discrimination because of her race was in 2001 when she worked at the ESU:

> Q: Do you allege that you were discriminated against because of your race and gender as well? When do you think you were discriminated against because of your race?
>
> A: When I was assigned to ESU.
>
> Q: After you left ESU did you feel you were discriminated against because of your race?
>
> A: No.

(Arroyo-Horne Dep. Tr. at 195:10-196:6.); and

> Q: At the 75th Precinct are you alleging you were discriminating [sic] against because of your race?

11

        A: No.

(Arroyo-Horne Dep. Tr. at 208:10-13.); see also id. at 88:5-9 ("So, like I said, this did start out to be a racial discrimination [case] when I was employed at ESU, however, thereafter it was more of a retaliation harassment"). Because Arroyo-Horne filed her most recent complaint with the NYSDHR on February 20, 2007, claims of discrimination that are predicated on conduct that occurred before April 26, 2006, including her claim that she was discriminated against at the ESU, are time-barred. See Mudholkar v. University of Rochester, 261 Fed. App'x 320, at *2 (2d Cir. Jan. 25, 2008) (noting that, in New York, a plaintiff must file a charge of discrimination with the NYSDHR or EEOC within 300 days of the alleged discriminatory conduct and that Title VII claims regarding acts that occurred more than 300 days before the employee's initiation of administrative review are time-barred).

It is true that Arroyo-Horne also testified that she was discriminated against because of her race while working at the 75th Precinct:

> Q: So what, if anything, happened to you at the 75th Precinct which you felt were discriminatory based on your race?
>
> A: Just the ongoing retaliation which has to come from higher authorities in the command.
>
> Q: So are you saying that it wasn't based on discrimination based on your race but it was in retaliation?
>
> A: Giving -- I would have to say that it is both.

(Arroyo-Horne Dep. Tr. at 167:18-168:1.)

Arroyo-Horne, however, has not come forward with any evidence from which an inference of discrimination arises. She points to no race-based comments and any inference that she was discriminated against because of her race is undermined by the fact that the supervisors

who she accuses of harassing her, primarily PAA McLaurin and NYPD Lieutenant Omally Benfield, are, like her, black. See e.g., Klings v. New York State Office of Court Administration, 2010 WL 1292256, at *9 (E.D.N.Y. Apr. 5, 2010) (finding that any inference of discrimination, without additional evidence, was not warranted where plaintiff and her "immediate supervisor who assessed Plaintiff's performance and determined that it was lacking, are members of the same protected class") (citation omitted); Tucker v. New York City, 2008 WL 4450271, at *5 (S.D.N.Y. Sept. 30, 2008) ("[A]ny inference of race discrimination is further undermined by the fact that all three superintendents under whom Tucker worked as well as three of his four direct supervisors at DOE were also African-American.") (citations omitted). Accordingly, her claim that she was discriminated against at the 75th Precinct claim fails.

*C. Arroyo-Horne Cannot Establish A Hostile Work Environment Claim*

Arroyo-Horne's admission that she has not been discriminated against because of her race is also fatal to her hostile work environment claim as "it is axiomatic that in order to establish a hostile work environment under Title VII, a plaintiff must demonstrate that the conduct occurred because of his membership in a protected class." Ventimiglia v. Hustedt Chevrolet, 2009 WL 803477, at *6 (E.D.N.Y. Mar. 25, 2009); see also Blake v. Potter, 330 Fed. App'x 232, 2009 WL 1448974, at *1 (2d Cir. May 26, 2009) (citing Alfano v. Costello, 294 F.3d 365, 374 (2d Cir. 2002)). Accordingly, the claim is dismissed.

*D. Arroyo-Horne Cannot Establish A Prima Facie Case Of Retaliation*

The Court now turns to the crux of Arroyo-Horne's complaint, that is, namely her claim that because she filed charges of discrimination with the NYSDHR and EEOC, lodged internal complaints of discrimination, and filed this lawsuit, her supervisors have subjected her to a "campaign of harassment which has followed her from one station house to the next." (Opp. Br.

13

at 10.) Title VII "forbids an employer to retaliate against an employee for, inter alia, complaining of employment discrimination prohibited by Title VII." Ventimiglia, 2009 WL 803477, at *13 (quoting Kessler v. Westchester County Dept. of Soc. Servs., 461 F.3d 199, 205 (2d Cir. 2006) (citing 42 U.S.C. § 2000e-3(a)). The McDonnell Douglas burden-shifting analysis that applies to Title VII discrimination claims also applies to retaliation claims, see Stoddard v. Eastman Kodak Co., 309 Fed App'x 475, 478, 2009 WL 367553 (2d Cir. Feb. 13, 2009) (citing Slattery v. Swiss Reinsurance Am. Corp., 248 F.3d 87, 94 (2d Cir. 2001), and "[t]o establish a prima facie case of retaliation, an employee must show [1] participation in a protected activity known to defendant; [2] an employment action disadvantaging the plaintiff; and [3] a causal connection between the protected activity and the adverse employment action," id. (quoting Richardson v. Comm'n on Human Rights and Opportunities, 532 F.3d 114, 123 (2d Cir. 2008) (citation omitted) (alteration in original)).

Arroyo-Horne's retaliation claims can be divided into two groups. The first group consists of her allegations that in retaliation for filing prior complaints of discrimination, she was:

(1) transferred from the ESU to Brooklyn North Narcotics in 2001;

(2) transferred from Brooklyn North Narcotics to the 90th Precinct in June 2002;

(3) subjected to a hostile work environment at the 90th Precinct from June 2002 to November 2002;

(4) denied transfers out of the 90th Precinct;

(5) transferred from the 90th Precinct to the 75th Precinct in November 2004; and

(6) transferred from the 75th Precinct's payroll unit to that precinct's crimes analysis unit in August 2005.

As discussed above, because Arroyo-Horne filed her complaint with the EEOC on February 20, 2007, these claims are time-barred. See Mudholkar v. University of Rochester, 261 Fed. App'x 320, at *2 (2d Cir. Jan. 25, 2008).[4]

Though not time-barred, Arroyo-Horne's second group of claims, which are predicated on her belief that NYPD Chief Michael Marino assigned PAA McLaurin to the 75th Precinct in August 2006 to harass her, are also dismissed. She has not come forward with any evidence from which a reasonable juror could infer that any of the actions that she complains of were taken in retaliation for engaging in an activity protected under Title VII. Proof that an adverse

---

[4] The Court rejects Arroyo-Horne's assertion that the claims are not time-barred because they are part of a continuing violation of discrimination. The continuing violation doctrine permits a plaintiff to proceed on an otherwise time-barred claim if any act that occurs within the 300-day period preceding the filing of an EEOC complaint can be said to have been committed in furtherance of an ongoing policy of discrimination. Stathatus v. Gala Resources, LLC, 2010 WL 2024967, at *7 (S.D.N.Y. May 21, 2010). "As a general matter, [the doctrine] is heavily disfavored in the Second Circuit and courts have been loath to apply it absent a showing of compelling circumstances." Trinidad v. N.Y. City Dept. of Corr., 423 F. Supp. 2d 151, 165 n.11 (S.D.N.Y. 2006) (citation and quotation marks omitted). Arroyo-Horne's allegations that she was transferred (or that her transfer requests were denied) in retaliation for complaining of discrimination are discrete acts that cannot form the basis of a continuing violation claim. See Anderson v. Nassau County Dept. of Corrections, 558 F. Supp. 2d 283, 297 (E.D.N.Y. 2008) ("[i]t is well-settled that certain adverse employment practices such as the failure to promote, failure to compensate adequately, undesirable work transfers, and denial of preferred job assignments are discrete acts and cannot be considered as part of an ongoing pattern or policy of discrimination.") (citing Mix v. Delaware and Hudson Ry. Co, 345 F.3d 82, 89 (2d Cir. 2003)). While Arroyo-Horne's claim that she was subjected to a hostile work environment at the 90th Precinct from June 2002 to November 2004 is not predicated on a discrete act, it is nevertheless dismissed because she has failed to come forward with any evidence that the purported hostile work environment was created as a result of a continuing and specific policy or practice of discrimination at the NYPD. Her mere allegation that "once you start to make waves" at the NYPD "you are blackballed," (Arroyo-Horne Dep. Tr. at 287), is insufficient to establish a continuing violation claim. Young v. Strack, 2007 WL 1575256, at *3 (S.D.N.Y. May 29, 2007) (quoting Velez v. Reynolds, 325 F. Supp. 2d 293, 312 (S.D.N.Y. 2004) (to invoke the doctrine, plaintiff must show either "(1) a specific ongoing discriminatory policy or practice, or (2) specific and related instances of discrimination that are permitted to continue unremedied for so long as to amount to a discriminatory policy or practice").

action was taken in retaliation for engaging in a protected activity can "be established directly through evidence of retaliatory animus directed against a plaintiff, or indirectly by showing that the protected activity was followed closely by discriminatory treatment [or] through other evidence such as disparate treatment of fellow employees who engaged in similar conduct." Barney v. Consolidated Edison Co. of New York, 2009 WL 6551494, at *11 (E.D.N.Y. Oct. 1, 2009) (quoting Terry, 336 F.3d at 152).

Arroyo-Horne has not come forward with any evidence of direct retaliatory animus by Chief Marino, PAA McLaurin or any other NYPD member. And aside from her conclusory allegation that other NYPD employees who did not complain of discrimination were not harassed, she offers no evidence from which a reasonable juror could conclude that she was similarly situated to these individuals. Finally, no reasonable juror could infer retaliation based on the timing of the adverse actions taken against Arroyo-Horne.[5] The gist of Arroyo-Horne's argument is that Chief Marino, who was not named in any of Arroyo-Horne's prior administrative complaints, had PAA McLaurin transferred to the 75th Precinct in August 2006 to harass Arroyo-Horne because of Arroyo-Horne's prior complaints of discrimination. While the Second Circuit has "not drawn a bright line to define the outer limits beyond which a temporal relationship is too attenuated to establish a causal relationship," Ragin v. East Ramapo Central

---

[5] Arroyo-Horne's protected activities are the filing of her complaints with the NYSDHR in May 2001 and April 2003, the filing of her EEOC complaint in June 2004, the filing of her NYSDHR complaint in February 2007, and the filing of her complaint in this action in December 2007. While it is true that Arroyo-Horne alleges that she repeatedly complained to her supervisors that she was being treated differently because of her race, and that such complaints could be considered protected activity, see Kaur v. New York City Health and Hospitals Corp., 688 F. Supp. 2d 317, 336 (S.D.N.Y. 2010) (citing Hubbard v. Total Communications, Inc., 347 Fed. Appx. 679, 681 (2d Cir. Sept. 30, 2009)), she has not come forward with any evidence establishing when she made these complaints, to whom, or the substance of her complaints. By contrast, defendants have submitted no less than 15 letters or memos that Arroyo-Horne wrote to her union representatives or NYPD officials complaining about the way she was being unfairly treated. None of her letters alleges race discrimination.

School District, 2010 WL 1326779, at *24 (S.D.N.Y. Mar. 31, 2010) (citing Gorman-Bakos v. Cornell Co-op Extension of Schenectady, 252 F.3d 545, 554 (2d Cir. 2001)), the gap of more than two years between the filing of her EEOC charge in June 2004 and PAA McLaurin's transfer to the 75th Precinct in August 2006 is on this otherwise meager record simply too long a period of time for an inference of retaliation to arise, see id. (citing cases).

As for Arroyo-Horne's claim that on the morning of March 30, 2007, a desk supervisor, Sergeant Jenkins, denied her request to take a sick day so that should care for her ill mother, the Court cannot say that the gap of one month between the filing of Arroyo-Horne's NYSDHR complaint in 2007 and Sergeant Jenkins's denial of her request is too attenuated to preclude an inference of retaliation. Nevertheless, even assuming that denying Arroyo-Horne's same-day request to take a sick day is an adverse action, the claim is dismissed because Arroyo-Horne has not come forward with any evidence that Sergeant Jenkins, who Arroyo-Horne did not name in her NYSDHR complaint, was aware that she had filed the NYSDHR complaint, thereby precluding an inference that Jenkins acted with a retaliatory motive. See Mack v. Otis Elevator Co., 326 F.3d 116, 129 (2d Cir. 2003) (affirming district court's dismissal of retaliation claim where plaintiff did not offer any evidence to "support the notion that [her supervisor] was aware of her complaints to Gallina or Reiff, or that as a result of this awareness he engaged in or escalated the hostile work environment to which he subjected her"). Finally, Arroyo-Horne's claim that she was transferred from the 75th Precinct to the 69th Precinct on October 6, 2009, in retaliation for filing this lawsuit in December 2007, is also dismissed. She offers no direct evidence of retaliation and the gap of nearly two years between the filing of her lawsuit and her transfer precludes any inference of retaliation.

II.   Equal Protection Claims

Arroyo-Horne's Fourteenth Amendment equal protection claims -- brought pursuant to 42 U.S.C. § 1983 -- also fail. Where, as here, a plaintiff's Title VII and equal protection claims are predicated on the same allegations they "must stand or fall together." Feingold v. New York, 366 F.3d 138, 159 (2d Cir. 2004) (citing Annis v. County of Westchester, 136 F.3d 239, 245 (2d Cir. 1998) ("In analyzing whether conduct was unlawfully discriminatory for purposes of § 1983, we borrow the burden-shifting framework of Title VII claims.")). Because Arroyo-Horne has failed to meet her prima facie case on her Title VII claims, her § 1983 claims are likewise dismissed.[6]

Arroyo-Horne's equal protection claims are dismissed for an additional reason: a municipality or municipal entity cannot be held liable under § 1983 for the actions of its employees unless the "alleged offending conduct was undertaken pursuant to 'a policy statement, ordinance, regulation, or decision officially adopted and promulgated by [the municipal officers[,] . . . [or] governmental custom even though such a custom has not received formal approval through the [municipality's] official decisionmaking [sic] channels.'" Bliven v. Hunt, 478 F. Supp. 2d 332, 337 (E.D.N.Y. 2007) (citing Monell v. Dept. of Soc. Servs. of City of New York, 436 U.S. 658, 690-91 (1978)). Arroyo-Horne's allegation that the NYPD has a policy of "blackballing" employees who complain of discrimination (Arroyo Dep. Tr. at 89-90.) is insufficient to establish the existence of a policy or practice warranting relief under § 1983.

---

[6] Arroyo-Horne correctly notes that the statute of limitations on her § 1983 claims is three years. Therefore, although her claim that she was transferred in August 2005 from the 75th Precinct's payroll unit to its crimes analysis unit in retaliation for filing her NYSDHR and EEOC complaints is time-barred under Title VII, the claim is not time-barred under § 1983. Nevertheless, Arroyo-Horne has failed to come forward with any evidence from which a reasonable juror could infer a causal connection between the filing of her EEOC complaint in June 2004 and her August 2005 transfer. Accordingly, the claim is dismissed.

III.     First Amendment Claims

Finally, Arroyo Horne's claims that her "First Amendment right of [free] speech was violated when the defendants unlawfully retaliation [sic] against her because of her complaints of discrimination" (Opp. Br. at 6) are meritless. In order to establish a First Amendment retaliation claim, an employee must establish, among other things, that she was engaged in constitutionally protected speech, that is, she "spoke as a citizen on a matter of public concern." Garcetti v. Ceballos, 547 U.S. 410, 418 (2006). "The heart of the matter is whether the employee's speech was 'calculated to redress personal grievances or whether it had a broader public purpose.'" Ruotolo v. City of New York, 514 F.3d at 189 (quoting Lewis v. Cowen, 165 F.3d 154, 163-64 (2d Cir. 1999)). If the speech is designed only to redress personal grievances, then the "employee has no First Amendment cause of action based on his or her employer's reaction to the speech." Garcetti, 547 U.S. at 418. The Court does not hesitate in concluding that all of Arroyo-Horne's many complaints were made solely to redress her personal grievances. Accordingly, her First Amendment claims are dismissed. See Huth v. Haslun, 598 F.3d 70 (2d Cir. 2010).

## CONCLUSION

Defendants' motion for summary judgment is granted with respect to each of plaintiff's claims. The Clerk of the Court is directed to close this case.

SO ORDERED.

Dated: Brooklyn, New York
       March 7, 2011

s/ Judge Raymond J. Dearie

RAYMOND J. DEARIE
United States District Judge